C. A. MÜLLER v. JOSEPH LANDA.

JOSEPH LANDA v. C. A. MÜLLER.

When a fresh-water stream is made the boundary between two riparian possessors the middle of the stream is the lineal partition between them, unless, by the express terms of the grant to the first possessor, this conclusion of law is excluded.

Where the same vendor had verbally sold on one side of the river, if it be claimed that by a subsequent deed on the other side of the river he excluded the above rule, the deed ought clearly to show it.

Where the calls in a deed are clear and explicit, and the monuments can be found by the ordinary rules of interpretation, parol proof cannot be allowed to vary the legal import of the words and to change the natural position of the lines called for.

The language, "thence along said extension (of a street) till it crosses the most northern spring of the Comal springs," meant the extension of the south side of the street, and not the line which the surveyor might run across the stream.

The lines of a survey do not always have a mathematical definition, length without breadth; they are as broad as the rivers and pass-ways which are appropriated as monuments for public as well as for private convenience, and, when so used in adjusting the legal rights of parties by them, the center or middle of them, whether a river, a creek, a spring, or a pass-way, fixes the limitation of the rights of parties, unless otherwise expressly provided for in the feoffment.

Where a party, believing that he has the exclusive right to a stream, obtains an injunction to restrain its use, and it turns out that he is mistaken, he is not necessarily liable to vindictive damages, but only to such actual damages as the party enjoined may have sustained.

APPEAL from Guadalupe. The case was tried before Hon. J. J. Thornton, one of the district judges.

The record was exceedingly voluminous, containing one hundred and forty pages. The plaintiff appealed upon the right to the property; the defendant appealed upon the question of damages. He had taken exceptions to the plaintiff's evidence, and assigned several errors. In the view taken by the court the following statement of the case is sufficient:

This suit was an ordinary action of trespass to try title, brought by appellant against appellee's testator to recover a portion of a small stream called the "Comal springs," which stream, or rather the one-half thereof, running along the lots of the defendant in Comal town, a few days previous to the institution of this suit, the defendant had entered and erected thereon, or was in the course of erecting, a dam, for the purpose of irrigating his lots.

Plaintiff claimed to be the entire owner of the stream, which defendant denied, and claimed to be the owner of the one-half, or to the center of the stream along the front of his lots. The whole controversy seemed to arise as to the boundary line between the premises of the plaintiff and defendant.

It is admitted that both parties deraign title from Maria Antonia Veramendi Garza. The plaintiff claimed under two deeds, duly recorded, one from Garza to Merriwether, dated June 14, 1847, and the other from Merriwether to Landa, the plaintiff, dated June 8, 1860.

The defendant claimed title to the lots, from which to the center of the stream he erected a dam, under a deed from Murchison, as attorney for Garza, to him, dated July 15, 1852, and that, by reason of his ownership of the lots, he is entitled to the ownership of the stream to the middle. Defendant also set up title to said lots, but not to the water or any part of the stream, under the statutes of limitation of three, five, and ten years, and also claimed

damages for the suing out the injunction, as wrongful, malicious, &c.

Upon the finding of the jury, on the special issues submitted, the court below rendered judgment against plaintiff "that he take nothing by his suit," and that defendant recover $800 damages; from which judgment this appeal is taken upon the various grounds in plaintiff's assignment of errors.

The language or description of the deed from Garza to Merriwether, relative to the point in dispute, is as follows:

"The tract of land hereby conveyed contains four hundred and eighty acres of land, more or less, lying on both sides of the Comal spring, and bounded as follows, to wit: Beginning at the corner of said Merriwether, at the head spring of the Comal, and running thence with the line of said Merriwether and the German Emigration Company to the line of Jose Veramendi; thence along said line of Jose Veramendi till it intersects with the extension of the south side of Murchison street, in Comal town; thence along said extension till it crosses the most northern spring of Comal springs; thence down the main .channel of the Comal spring to Milburn street, and thence along the most left-hand channel thereof to the most western cross street in the town of Comal, called Elizabeth street," &c.

It was insisted by Landa that, in accordance with the calls in his deeds, his boundary line crossed the most northern spring of Comal springs, and from thence ran down the main channel of the spring along the left, or east, or southern bank, as it is sometimes called, so as to include the entire stream from the point where his line crossed the most northern spring down to the. point where his line left the stream. The defendant, however, contended that after crossing the most northern spring the line must run down the middle of the stream, according to the rules of riparian rights.

It was proved that a surveyor, J. J. Groos, in 1860, about

the time of Landa's purchase, made a survey of the same premises, and also in March, 1868, he made a survey and map of the same, under the order of the court below, duly verified by oath. (The map cannot be given.)

These surveys all correspond, and so the jury found, and were in accordance with the descriptions in the deed to Merriwether and in the deed to Landa, if the claim to the whole stream was correct.

Surveyor Groos also swore, in the affidavit attached to the survey under order of the court, that his survey "is a true and correct survey of the lands and lines in controversy, together with the field-notes, metes, and bounds thereof," and that the plat filed "is a true and correct delineation and representation of said lands, then boundary lines of the town lots of Comal town and Comal springs."

As the court in effect rejected the parol evidence in explanation of the deed, it need not be further noticed than to say that the part relied upon will be found in the motion to reconsider.

*Waelder & Upson,* for Landa.—I. "All the various rules of construction adopted are designed for the purpose of arriving at and carrying out the intention of the contracting parties. When that is manifest, all else must yield to and be governed by it." (Swisher v. Grumbles, 18 Tex., 173.)

"Every call in the description of the premises in a deed must be answered if it can be done. The intention of the parties is to be sought by looking at the whole, and none are to be rejected, if all the parts can stand consistently together. (Herrick v. Hopkins, 10 Shep., 217.)

The rules in ascertaining boundaries are, first, natural objects; second, artificial marks; third, course and distance. (16 Tex., 96.) Natural or well-known objects must control. (Urquhart v. Burleson, 6 Tex., 502; Hubert v. Bartlett, 9 Tex., 97.)

"A call for a natural object, as a river, a known stream, a spring, or even a marked tree, will control." (Anderson v. Stamps, 19 Tex., 465.)

Natural or permanent objects embraced in a call have absolute control, &c. (Brown *et al.* v. Huger, 21 How., 305; 2 Mass., 380; 5 Mass., 355; Pierson v. Wood, 6 Mass., 131.)

If course and distance be called for in a deed terminating in a natural boundary, there the line must terminate, whether it exceeds or falls short of the distance mentioned in the deed. (Haywood's Law and Eq., 432.)

Most natural and certain call shall control. (Whiteside v. Singleton, 1 Meigs, 207.)

II. Milburn or Mulburry street terminates on the left bank of the stream, and if the line were to run down the center of the stream it would not strike that street, rendering the line inconsistent with this call, to wit, a fixed and well-known artificial object—a street.

The expression "main channel," was evidently used because, as is apparent from the deed, there were more than one or several channels in the stream. The call, thence down the "main channel," gave the course of the line from the point on the left bank of the most northern spring to Milburn street, and must be run consistent with these points.

III. The bed of a private river is a substantive matter of grant, and can only pass as such. It can never pass as an incident or appurtenant to a grant. (Child v. Starr, 4 Hill, 369.)

Garza, being the owner of the land on both sides of the stream and of the entire stream, had a right to sell the land on either or both sides of the stream, with or without the stream, or to sell the stream or any part of it separately. (Knight v. Wilder, 2 Cush., 199; 3 Kent, marg. p. 434; Hotch v. Dwight, 17 Mass., 189.)

[The counsel cited many authorities on the statute of lim-

itation; but the case turned upon the defendant's right to
the middle of the stream; not as to whether possession of
the lots was possession to the middle of the stream.

The counsel discussed and criticized the parol evidence
of the defendant in 1847; but, as the case turned upon the
calls in the deed, it seems to be immaterial.]

*John Ireland* and *John P. White*, for Müller.—This is a
cross appeal, and the defendant assigns various errors in the
ruling of the court below.

I. Müller bought and went into possession. This pos-
session was notice to Merriwether. (Ewing v. Burnett,
11 Pet., 41; Houston v. Sneed, 15 Tex., 307; 2 Sug. on
Vend., 1052, sub-div. 48; 4 Kent, 6th ed., 179; 1 Story's
Eq., 400; 5 Johns. Ch., 29; 1 S. & M., 70; 3 Pick., 149; 10
Pet., 223; 3 Paige, 421; 2 Paige, 300; 1 Monr., 201; Pre-
chard v. Brown, 4 N. H., 397.)

II. Müller's title is good under the laws of limitation.
Müller was in actual adverse possession from February,
1867, to the date of the institution, in October, 1860.

III. Merriwether's deed, under which Landa claims, gave
no rights east beyond the center of the stream. (2 McLean,
376; Jones v. Soulard, 24 How., 41; 4 Hill, 269; 1 Rand.,
417; 2 Smith's Lead. Cas., 192; 22 Pick., 354; 9 Cush.,
492.)

If the vendor intends to exclude a purchaser from the
water, he must do so by clear and unequivocal language.
(1 Rand., 417.)

So, if a vendor would sell all the water to one, he must
do so by language that cannot be misunderstood. (27 Tex.,
304.)

IV. The agreement, filed 9th May, 1867, as to deraigning
title, should have been set aside after the amended petition
was filed. The agreement was made with reference to the
case and pleadings as they then stood, and could not have
been intended to bind the defendant to any after-made case.

V. The deed from Merriwether to Landa is not properly authenticated and should have been excluded. If the officer taking the acknowledgment can omit the word "consideration," he may leave out "purposes." (Paschal Dig., Art. 5007.)

VI. There is no ambiguity in the deed. It is as plain as the English language can make it. But if there was any ambiguity, it could not be explained by parol. (1 Bouv. Dic., tit. AMBIGUITY, and cases cited; 1 Greenl. on Ev., 297.)

The ninth assignment questions the action of the court in refusing to instruct the jury. Whether it was a case which would authorize the jury in giving exemplary damages was a question for the jury and not for the court, and it cannot be said that the case was so clearly free from badges of oppression and wrong as to justify the court in withholding the question entirely from the jury.

It had no more right to withhold an instruction on the subject of corrective damages than it had to decline to charge on any other branch of the law of the case. (Gordon v. Jones, 27 Tex., 620; Graham v. Rhoder, 5 Tex., 141.)

LINDSAY, J.—It is a principle of law too well settled to be now disturbed that, when a fresh-water stream is made the boundary between two riparian possessors, the middle of the stream is the lineal partition between them, unless, by the express terms of the grant to the first possessor, this conclusion of law is excluded. This is a contest between two riparian possessors of land on the opposite sides of Comal creek or river, called Comal spring, for the right of use of the flowing water in the stream, each deriving his title to the soil from the same vendor, at different periods of time, and each calling for the stream as a part of the boundary of his territory. From the proof in the case, it appears that the appellee, under a verbal purchase from the common vendor, went into actual possession of his portion of the land prior to the purchase of the appellant, and

continued in that possession down to the institution of this suit; that this verbal purchase was afterwards ratified and confirmed by the vendor by a deed of conveyance, but not until some several years after a sale and conveyance by the vendor of the land on the opposite side to the appellant. Now, there can be no question, if the vendor of each of these parties litigant had desired to do so, he might have conveyed, in express terms, by his deed to the appellant, the land to the east or southeast bank of the Comal, notwithstanding the previous verbal sale to the appellee of a part of the land on that side, with the stream as one of its boundaries. It would only have been a disaffirmance, *pro tanto*, of his contract with the appellee, which he had the right to make, as, by the statute of frauds, the appellee was precluded from enforcing his contract against his vendor.

The only question therefore for the determination of the court is the intention of the vendor, as disclosed by his deed to the appellant. This involves simply the proper construction of the language of the deed with reference to the established rules of law. The deed to the appellant bears date the 14th day of June, 1847. The deed to the appellee bears date the 15th day of July, 1852. The possession, however, of the land purchased by the appellee under the verbal contract was taken by him in February, 1847, and he was in possession at the time of the sale and conveyance to appellant. Was it, then, the intention of the vendor to make the east or southeast bank of the Comal the boundary of the land conveyed to the appellant? Or was it the purpose of the vendor simply to make the stream the line? Is there such an ambiguity in the language of the deed as to require proof *aliunde* to ascertain the real purpose of the contracting parties? The deed, in defining the boundary, uses this language: "Beginning at the corner of said Merriwether, (the first vendee,) at the head-spring of the Comal, and running thence with the lines of said

Merriwether and the German Emigration Company to the line of Jose Veramendi, thence along said line of Jose Veramendi until it intersects with the extension of the south side of Murchison street in Comal town; thence along said extension until it crosses the most northern spring of Comal spring; thence down the main channel of the Comal spring to Milburn; and thence along the most left-hand channel thereof to the most western cross street in the town of Comal, called Elizabeth street," &c. This is all the boundary necessary to be recited and construed in the determination of this controversy, as there is nowhere in the deed a direct avowal of a purpose to convey the whole bed of the stream to the appellant. The boundaries of all lands are fixed and established by certain definite monuments, which are either natural or artificial. The existence of these monuments upon or around the land may be established by parol proof. But no proof can be allowed to alter or to vary the legal import of these monuments, when it has not been so altered and varied in the terms of the written contract; much less ought it to be tolerated in reference to the solemn and deliberate stipulations in a deed.

What, then, are the monuments set forth in the deed to the appellant? They are the natural object, the head spring of the Comal; the artificial objects, the lines of Merriwether and the Emigration Company; the artificial line of Jose Veramendi, and the artificial extension of the south side of Murchison street in Comal town; the natural objects, the northern spring of the Comal, the main channel of the Comal, Milburn street, and, lastly, the left-hand channel from thence to Elizabeth street, which is the last monument necessary to be alluded to for a proper legal adjustment of this controversy. The solution of the difficulty depends upon a correct understanding of the true import of that portion of the boundary set forth as "thence along said extension till it crosses the most northern spring of

xxxi—18

Comal spring." What extension is here meant? Obviously, it is the extension of the south side of Murchison street, and not the line which the surveyor was then running, if it was so run to obtain the field-notes preparatory to making the deed; nor, if it were not so run by the surveyor, was it the line which the vendor had in his mind's eye or was running out in his imagination for the investiture of the title in his vendee; but it was none other, according to grammatical rules and all fair and reasonable construction, than the extension of the south side of Murchison street which was contemplated and described as crossing the head spring of Comal, and the limitation, "till" it so crossed, was merely intended definitely to designate the natural object called for—"the head spring." This view of this special call is confirmed by the language of the preceding call, which shows conclusively that the word "extension" is applied in both instances to these artificial monuments of the survey—the Veramendi line and Murchison street. The personal pronoun "it," in the latter of these two calls, can only have reference to the extension of Murchison street, and not to the actual boundary, as contemplated, of the land conveyed by the deed.

It must be remembered that, in legal parlance, the lines of a survey do not always have a mathematical definition, length without breadth. They are as broad as the rivers and passways, which are appropriated as monuments for public as well as private convenience. But, when so used, in adjusting the legal rights of parties by them, the center or middle of them, whether a river, a creek, a spring, or a passway, fixes the limitation of the rights of parties, unless otherwise expressly provided for in the feoffment. We therefore conclude in this case, that the thread of the stream of the Comal is the limit of the rights of these parties on that boundary. The whole question being involved in the construction of the deed from the common vendor to the appellant, we deem it unnecessary to go

into an investigation of the other questions raised on the trial, except as to the question of damages which is mooted in the cross-appeal of the appellee.

On this point we are equally clear in our convictions. The error assigned by the counsel for the appellee, that the court refused to admit proof on the trial in support of a claim for exemplary or "corrective" damages, is not sustained by the law. Any actual damage which the appellee may have sustained by reason of the wrongful suing out of the injunction was a proper subject of inquiry under the plea in reconvention. But to predicate or charge malice for the obtention [obtaining?] of an injunction to stay what might be conceived to be, however mistakenly, the unwarranted uses of property in litigation, would be productive of more mischief than the statute of injunction was even intended to remedy. We think it needless to elaborate the legal principles involved in the question thus raised.

Upon the whole, therefore, we feel constrained to affirm the judgment of the court below.

JUDGMENT AFFIRMED.

MOTION TO REHEAR IN THE SUPREME COURT.

*Waelder & Upson* filed a motion to reconsider. They argued upon the facts to show that the court had misapplied the legal principles used.

LINDSAY, J., in response to the petition for rehearing.—We have carefully examined the petition presented by the counsel for the appellant for a rehearing in this case. Notwithstanding the very able and ingenious criticism of the opinion of the court, and the elaborate and plausible manner of applying the law to the facts in the case, we can discover no sufficient reason to doubt the

justness of the conclusions at which we arrived in the opinion delivered in the cause. It is supposed by the learned counsel in the argument, orally, by brief, and in the petition, that as, from the announcement in the deed, it was the purpose of the vendor to convey land on both sides of the Comal, *ergo*, he did convey the whole bed of the stream. But it should be recollected that the deed does actually convey land on both sides of the stream. It is not, however, necessarily on both sides at the point where the controversy originated. The line leaves the stream below the disputed territory, and actually embraces land, in the boundary of the survey, below the land of the appellee. So, in fact, the deed does what the vendor professed to be his purpose, convey land on both sides of the stream. This therefore conflicts in no degree with the opinion.

It is further urged that the witness who testified as to the date of the appellee's possession was mistaken; because another witness, who laid off the town of Comal, and delineated a map of it shortly after, stated some physical circumstances in connection with the land which was contradictory to his statements. The first witness swears positively and affirmatively to the fact. His credibility was not directly assailed. It was the province of the jury to judge of the weight to be attached to the testimony of each of the witnesses; and, unless it was made clearly manifest that the jury had grossly abused their privilege of thus judging, it would be an abuse of the discretion of this court to undertake to control their judgment by disturbing their verdict. Wherefore the motion for a rehearing is

Overruled.