CHICAGO & NORTHWESTERN RAILWAY COMPANY and others, Respondents, vs. GROH and others, Appellants.

CHICAGO & NORTHWESTERN RAILWAY COMPANY and others, Appellants, vs. GROH and others, Respondents.

*May 3 — September 26, 1893.*

(1, 2) *Adverse possession of land: "Claim of title:" Right to accretions not inclosed.* (3) *Ejectment: Offer of judgment: Costs.*

1. Good faith on the part of the person making entry upon land is not essential to render such entry and the possession held under it adverse. It is a sufficient "claim of title" that the entry of the disseisor is hostile to all the world, and he intends to hold the land as his own, and does so hold it for the statutory period of limitation.

2. The accretion to land on the shore of a lake belongs to the owner of the shore, whether his title to the shore rests in actual grant or upon adverse possession thereof for the statutory period of limitation, and whether the accretion is or is not actually inclosed.

3. Under sec. 2789, R. S., if the plaintiff in ejectment did not accept a seasonable offer of judgment for the recovery of all the land which he afterwards recovers, defendant is entitled to costs from the time of the offer.

APPEALS from the Circuit Court for *Sheboygan* County. This is an action of ejectment commenced in November, 1889, to recover a tract of land in the city of Sheboygan lying south of the harbor in that city, bounded on the east by Lake Michigan, on the south by a direct line running from Lake Michigan west to the Sheboygan river, and on the west and north by irregular lines sufficiently described in the complaint. For convenience or accuracy of description three tracts of land are described in the complaint, each by metes and bounds, but these adjoin each other, and together constitute but one parcel of land. The complaint is in the usual form. The answer contains a denial of plaintiff's title to the land claimed, and alleges adverse possession thereof by the defendants for more than thirty years, under sec. 4214, R. S. It appeared in proof that defendant *George*

*Groh* had been in the actual possession of some portion of the land described in the complaint continuously ever since 1848,— he having resided thereon all that time,— and that the other defendants claim under him.

On the trial the circuit court held as matter of law that the plaintiffs had established their title to all the land claimed in the action, unless such title had been divested by adverse possession of defendants. The jury found specially that defendant *George Groh* entered upon a portion of the land described in the verdict by metes and bounds under claim of title exclusive of any other right; that he pro- tected the same by a substantial inclosure; and that he and those claiming under him had been in the continuous, act- ual, visible, and adverse possession of the land so inclosed, hostile to plaintiffs and their grantors, for more than twenty years before this action was commenced. It appeared also that the east line of such inclosure originally abutted Lake Michigan, but that afterwards, by the action of the elements and perhaps other causes, a considerable accretion of land formed between the east side of such inclosure and the waters of the lake, outside of such inclosure. The jury also negatived the claim of plaintiffs that defendant *George Groh* ever held the land in controversy as tenant of certain grant- ors of plaintiffs named in the verdict.

Plaintiffs moved for a new trial; also for judgment on the verdict for all the land claimed; and defendants moved for judgment on the verdict for the land formed by accre- tion, as well as for that contained in the inclosure. All these motions were denied, and on the evidence and verdict the circuit court gave judgment for defendants, without costs, for the land actually within the inclosure as described in the verdict; and for the plaintiffs, with costs, for the residue of the land claimed. The judgment for plaintiffs includes a quantity of land west and north of such inclosure, adjoining the same, and the accretion on the east thereof.

The plaintiffs appeal from that part of the judgment which awards to defendants the land contained in the inclosure, and the defendants appeal from that part thereof which denies them costs and awards the plaintiffs the land between such inclosure and the waters of Lake Michigan, thus formed by accretion, with costs.

For the plaintiffs there was a brief by *Seaman & Williams*, attorneys, and *Rietbrock & Halsey*, of counsel, and oral argument by *Francis Williams* and *L. W. Halsey*. They contended, *inter alia,* that to constitute adverse possession entry must be made with *well-defined claim of title,* and possession continued while the statute runs. *Pepper v. O'Dowd*, 39 Wis. 538; *Link v. Doerfer*, 42 id. 391; *Hacker v. Horlemus*, 69 id. 280; *S. C.* 74 id. 21; *Graeven v. Dieves*, 68 id. 317; *Jackson v. Thomas*, 16 Johns. 293; *Grube v. Wells*, 34 Iowa, 148; *Harvey v. Tyler*, 2 Wall. 328, 343; *Probst v. Presb. Church*, 129 U. S. 182, 191; Tyler, Ejectment, 860. Defendants did not acquire any right to the accretions. The adverse possession could not be extended by construction beyond the land actually inclosed and occupied. 1 Am. & Eng. Ency. of Law, 292, § 44, and cases cited; Tyler, Ejectment, 891; *Sydnor v. Palmer*, 29 Wis. 226, 252; *Graeven v. Dieves,* 68 id. 321; *Harvey v. Tyler*, 2 Wall. 328.

For the defendants there was a brief by *C. H. Maynard*, attorney, and *Turner & Timlin*, of counsel, and oral argument by *C. H. Maynard* and *W. H. Timlin*. To the point that the title to the mainland, acquired by adverse possession, carried with it the accretions, they cited *Valentine v. Piper*, 22 Pick. 85; *Cobb v. Lavalle*, 89 Ill. 331; *Kinzie v. Winston*, 4 Nat. B. Reg. 21; *Lombard v. Kinzie*, 73 Ill. 446; *Wood v. San Francisco*, 4 Cal. 190; *New Orleans v. U. S.* 10 Pet. 662; *Boorman v. Sunnuchs*, 42 Wis. 233; *Delaplaine v. C. & N. W. R. Co.* id. 214; *Diedrich v. N. W. U. R. Co.* id. 248; *Nebraska v. Iowa*, 143 U. S. 359; Angell, Watercourses, sec. 53; *Cook v. Burlington*, 6 Am. Rep. 649;

*Turner v. People's Ferry Co.* 21 Fed. Rep. 90; *Norcross v. Griffiths*, 65 Wis. 599; *Oleson v. Merrill*, 42 id. 203; Gould, Waters, sec. 155; *Bailey v. Wells*, 55 Conn. 292; Burrill, Law Dict. INCIDENT; *Bates v. Ill. Cent.* 1 Black, 204; *East Omaha L. Co. v. Jeffries*, 40 Fed. Rep. 386.

The following opinion was filed June 21, 1893:

LYON, C. J.    A careful examination of the testimony satisfies us that the court ruled correctly that the plaintiffs had established their title to all the land in controversy, except in so far as their title to a portion thereof might be divested by the alleged adverse possession of defendant *George Groh* and those claiming under him.

I. The appeal of plaintiffs will first be considered. The errors chiefly relied upon by them for a reversal of so much of the judgment as awards defendants the land included in the inclosure are that the testimony does not support the finding of such adverse possession, and that the court gave erroneous instructions as to the character of the entry which would justify the finding of adverse possession.

The substance of the instructions excepted to is contained in an instruction construing the statute defining adverse possession, as follows: "The words 'under claim of title' are not to be taken to mean that it is necessary that *Groh* should have thought the land belonged to him before he entered, but if he went onto it with the intention to claim it and keep it as his, without knowing or caring who else claimed to own it, that would be an entry under claim of title." On behalf of plaintiffs it is claimed there should also have been some color of title or right to enter to constitute "claim of title" within the meaning of that term as employed in the statute. The real controversy here is whether, in order to render the entry of *George Groh* adverse, he should have made the same in good faith, believing he had right to enter. Whatever may have been said

on this subject in some of the older cases, we think the decisions of this court, which it is believed are in accord with the general course of later adjudications, have established the rule in this state that good faith on the part of the person making entry upon land is not essential to render such entry and the possession held under it adverse. It is a sufficient claim of title that the entry of the disseisor is hostile to all the world, and he intends to hold the land as his own, and does so hold it for the statutory period of limitation. See *Hacker v. Horlemus*, 69 Wis. 280, and the cases cited in the opinion by the late Mr. Justice TAYLOR.

As to the sufficiency of the proofs of adverse entry and possession, *George Groh* testified as follows: "When I inclosed that land for my home I did not know who owned it. I took it for my own. Nobody afterwards claimed it. . . . Nobody asked me for something. When some men came there and asked me, 'Is that land yours?' I said, 'Yes.' That is all I told them. No man ever came there and tried to get me to sign a lease." This testimony covers a period of more than thirty years, and if the jury believed it,— as it was competent for them to do, and as they doubtless did,— it is sufficient to support the verdict that the entry and possession of the inclosure in question by *George Groh* was "under claim of title exclusive of any other right," within the meaning of the statute. There is also abundant evidence that such adverse possession was continuous for more than twenty years before this action was commenced.

It follows that the portion of the judgment which establishes defendants' title to the land within the inclosure should not be disturbed. On the appeal of plaintiffs the judgment of the circuit court must be affirmed.

II. The succession of plaintiffs to the title of the original owners being established, the appeal of defendants raises the single question as to who owns the land between the

Chicago & Northwestern R. Co. and others vs. Groh and others.

east side of the inclosure and the waters of the lake, made by accretion after *George Groh* built his fence along the margin of the lake. The judgment awards the same to the plaintiffs.

The adverse possession of *George Groh* and those claiming under him, which has ripened into a title, extended in its inception to the waters of the lake. Hence the disseisin was of the shore of the lake, and it necessarily included all riparian rights pertaining to the ownership of the shore. By virtue of these the accretion becomes, so to speak, an increment of the shore and included in the disseisin because essential to the enjoyment of riparian rights appurtenant to the shore. In this view it seems immaterial that *George Groh* did not constantly keep his east fence extended to the waters of the lake, for when he disseised the grantors of plaintiffs of the shore, such disseisin, not only in its inception but during its whole duration until it ripened into a title, included riparian rights, and for the enjoyment of these necessarily included the accretion in controversy.

The rule which gives accretions to the owner of the shore is also based, to some extent, on the fact that the action of the water is as liable to make inroads upon the shore as to deposit accretion against it. Thus the rule includes the idea of compensation to, as well as the preservation of riparian rights of, the owner of the shore.

Moreover, there is nothing permanent in the continuance of mere accretion. Unprotected, it is always subject to the changing action of the water, which may be produced by many causes. During one period it forms accretion against the shore, thus extending the shore to a line formerly covered by water. Again, the same result follows a receding of the water without accretion. And during another period the water sweeps away the accretion, and often much of the original shore with it, to the great loss of the riparian owner. Thus, in the present case, the re-

moval or extension of harbor piers or other breakwaters at Sheboygan might so affect the action of the water as to result in a few years in sweeping into the lake, not only the accretion, but all the land in controversy. The same results might follow a protracted period of high water and winds, without the aid of artificial causes. Should the accretion be thus swept away,— restoring the original shore line,— and then should it again form against such original shore, we do not doubt it would belong to the defendants by virtue of their ownership of such original shore line established by the judgment. If so, why are destruction and restoration of the accretion essential to defendants' title thereto? Is it not reasonable and logical to hold that from the beginning the accretion was but an increment of the shore, and that, whatever right the defendants ever had in the shore, they necessarily had the same right in the increment as inseparable from the shore? In this view, adverse possession of the shore was like possession of the accretion, and title to the shore, acquired by adverse possession, carries with it title to the accretion.

It must be admitted that the question is not free of doubt or entirely easy of solution, but after giving it much consideration we are constrained to think the better rule is that the accretion, whether actually inclosed or not, belongs to the owner of the shore, whether his title to the shore rests in actual grant or upon adverse possession thereof for the statutory period of limitation, which, it is sometimes said in the books, implies a grant. We think the cases cited on behalf of defendants, although not directly in point, perhaps, are in that direction and indicate the more reasonable rule. The case most directly in point is that of *Campbell v. Laclede G. L. Co.* 84 Mo. 352, in which it was held (quoting a headnote which correctly states the decision) that "a riparian proprietor is entitled to the accretions made to his land by the river, and the statute of

Chicago & Northwestern R. Co. and others vs. Groh and others.

limitations, in its application to such accretions, relates back to the time it began to run in favor of the riparian owner as to the main bank. The accretions, in becoming a part of the land to which they are joined, take the title and condition of that land just as it exists at the time of their formation. If the riparian owner is barred, or partially barred, by the statute of limitations as to the bank, he will be barred as to the accretions in like manner, although they may have been deposited but a year or a day." The court says: "The accretion grows, as it were, gradually into the soil and title of the riparian proprietor."

On the appeal of defendants, the portion of the judgment appealed from must be reversed.

III. This action has been twice tried. The record shows that before the last trial the defendants served upon plaintiffs a written offer of judgment for the recovery, if we understand the offer correctly, of the land which they will recover under this decision. The plaintiffs did not accept the offer. If the scope of the offer is as we understand it to be, the defendants must have costs in the circuit court from the time it was made. R. S. sec. 2789. We perceive no legal objection to allowing plaintiffs their costs in the circuit court accruing before such offer.

*By the Court.*— On the appeal of plaintiffs the judgment of the circuit court is affirmed. On the appeal of defendants the portion of the judgment appealed from is reversed. The cause will be remanded with directions to that court to render judgment in accordance with this opinion.

Upon a motion by the plaintiffs for a rehearing upon the defendants' appeal there was a brief for the plaintiffs by *Francis Williams* and *Rietbrock & Halsey*, attorneys, and *F. C. Winkler*, of counsel, and a brief for the defendants by *C. H. Maynard*, attorney, and *Turner & Timlin*, of counsel.

For the plaintiffs it was contended, *inter alia*, that this case stands alone in awarding title to land to a claimant upon a mere constructive possession (if such it may be called), where there was no color of paper title. The accretions are certainly not inseparable from the original shore. It has lately been held in Minnesota that riparian rights may by the acts of parties be separated from the ownership of the shore. *Hanford v. St. P. & D. R. Co.* 43 Minn. 104; *Gilbert v. Eldridge,* 47 id. 210; *Minneapolis Trust Co. v. Eastman,* id. 301; *Wait v. May,* 48 id. 453. The doctrine, in substance, is conceded in this state. *Norcross v. Griffiths,* 65 Wis. 599. Lands once formed may, after the alluvion, unquestionably be so separated from the original possession.

The motion was denied September 26, 1893.