GRAHAM et al. v. KNIGHT. (No. 2484.)

(Court of Civil Appeals of Texas. Texarkana. April 14, 1922. Rehearing Denied April 27, 1922.)

1. **Waters and water courses** ⊂⊃155—**Accretion passes to grantee of upland unless contrary intention appears.**

Though a riparian owner may, on sale of the upland, reserve either the submerged land or the accretions, or may make it the subject of a separate sale or sell it with the upland, the general rule is that the accretion passes with the upland unless a contrary intention appears.

2. **Boundaries** ⊂⊃14—**Call for "bank of river" is unambiguous and extends to water's edge.**

A call in a deed for the west bank of a river, thence with the meanderings of the bank of the river to stake, is unambiguous and conveys the land to the water's edge, since the bank means the land adjacent to the water.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bank (Of Stream or Pond)].

3. **Evidence** ⊂⊃450(3)—**Calls in description of deed held unambiguous so as to exclude parol evidence.**

Calls in a deed for the west bank of a river are unambiguous and exclude parol evidence that it was intended to convey only the original upland and not the accretions.

4. **Adverse possession** ⊂⊃115(7) — **Evidence held not to establish as a matter of law adverse possession to accretions.**

Evidence of possession by defendant's predecessors in title to all of the accretions adjoining plaintiffs' and defendant's lands, under a claim to the extent of their deed as a part of the survey including defendant's land, *held* not to show as a matter of law adverse possession entitling defendant to an instructed ver-

dict for that portion of the accretion which would have been allotted to plaintiffs except for the possession.

**5. Adverse possession ⊚⇒19—Of accreted land by intruder must be by inclosure for 10 years.**

Accretions, in becoming a part of the lands to which they are joined, take the title and condition of that land as it exists at the time of their formation, and, unless the riparian owner is barred by the statutory limitation of adverse possession as to the mainland or as to the entire river frontage thereof, he has title to the accretion, so that for a mere intruder, or person without deed or color of title, to claim a right to accreted land, he must show 10 years' adverse possession by actual occupation and inclosure which is definite and notorious.

**6. Waters and water courses ⊚⇒93—Accretions should be apportioned among adjoining owners in proportion to frontage.**

Accretions to riparian lands should be apportioned to the owners of the adjoining lands in proportion to the river frontage of those lands as shown by the original field notes and by the present frontage of surveys on the river inclosing the accreted lands.

**7. Waters and water courses ⊚⇒40—Right of riparian owner to river frontage is vested right.**

The right of riparian owners to the river frontage is a vested right to which they are entitled, if not barred by limitation, regardless of how small or large their tract was before the accretions in controversy.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Trespass to try title by T. M. Graham and others against M. H. Knight. Judgment for defendant on directed verdict, except as to land disclaimed by defendant, and plaintiffs appeal. Reversed and remanded for another trial.

The action is by appellants against appellee in trespass to try title to a tract of land specially described as a part of the John Collom headright survey and the C. M. Collom labor survey, and containing 450 acres more or less. The appellants pleaded, besides ownership in fee simple, the statutes of limitations of three, five, and ten years. The appellee filed a disclaimer of title or claim of ownership to all that portion of the land described in the field notes in the appellants' petition lying south of a line running due east from the northeast corner of the L. Peters H. R. survey to the bank of Red river, and as to all land north of this line pleaded not guilty and the statutes of limitations of three, five, and ten years.

After hearing all the evidence, the court gave a peremptory instruction to the jury to return a verdict in favor of the appellee, and a judgment was accordingly entered in favor of the appellants for the land disclaimed and that appellants take nothing against the appellee as to the other portion of the land. Appellants on appeal seek to revise the ruling of the court in giving the peremptory instruction.

The land in controversy borders, in the shape of a half-circle, on Red river, and lies between the river as it now runs and as it ran in 1844 and 1849. It seems to be conceded that the land was formed by accretion or by gradual change of the bed of the river east and south of the two original patents since 1844 and 1849. This accreted land consists now, as it has for some time, of quite a large acreage of alluvion. The C. M. and John Collom surveys are the patented lands to which the addition is made. The C. M. Collom survey of 177 acres was patented in 1844 and was located in the shape of a horseshoe bordering west, north, and east on the banks of Red river according to its then meanders. The patent calls for the beginning of the survey "at a stake on the north boundary of L. Peters survey, on the bank of Red river, from which a sweet gum bears 66 degrees east 17.3 varas," and thence with the various described meanders of the river. The Peters survey lies next and to the south of this survey. The John Collom H. R. survey of 1872 acres of land was patented in 1849, and its calls are as follows:

"Beginning at the N. E. corner of the L. Peters H. R. survey. Thence east with the south line of the C. M. Collom H. R. survey 110 vrs. to Red river. Thence down said river with its meanders as follows (describing them), etc."

The river ran at the time in a general southeasterly direction on the entire northerly and part of the easterly boundary lines of this survey. The bank of the river is now a distance of some 1200 varas east from where was the easterly boundary line of the C. M. Collom original survey, and that distance or more north of the original northerly and easterly boundary line of the John Collom survey. The extension or change of the river bed is along the original east boundary line of the C. M. Collom, and the north and northeast boundary line of the John Collom survey.

Appellants deraign title to the land and the accretions thereto in suit situated on the John Collom survey by a complete chain of conveyances to Wiley Whitfield, under whom they claim. They further deraign title to the accretions on the C. M. Collom survey by a regular chain of conveyances to J. W. Rochelle, and from the heirs of J. W. Rochelle to appellants, under whom they claim. The deed to appellants is subsequent to a deed by the Rochelles to Kosminsky, under whom appellee claims; and the deed to appellants conveys:

"All lands and interest in lands claimed and owned and held (by the heirs) on August 20,

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

1919, and at this date, together with all accretions and additions thereto located and accreted thereto in the John Collom H. R. survey on Red river and on the C. M. Collom Labor survey on Red river about 7 miles northwest from Leary in Bowie county, Texas. It being the intention and purpose of this deed to convey to said grantees all the lands and all the interest in lands owned or held (by the heirs) in said two surveys."

The appellee showed a regular chain of transfers from the patentee to himself of all the C. M. Collom survey.

It was proven that, after the C. M. Collom survey came into ownership of the Rochelles, they conveyed it to J. Kosminsky—first the west half, and subsequently the east half. The east half (which followed the accreted land) is described in the deed, and that description is followed in every deed down to appellee, as follows:

"Lot No. 1, being the east one-half of the C. M. Collom survey of 177 acres of land in Bowie county, Texas, beginning at a stake 180 vrs. W. from N. E. corner of the L. Peters H. R. survey on Red river; thence east with said Peters north boundary line 180 vrs. a stake, the N. E. corner of Peters survey, and east 100 vrs., the west bank of Red river; thence with the meanderings of said river N. 4 E. 1,556 vrs.; thence S. 59 W. 180 vrs.; thence S. 47 W. 210 vrs.; thence with the bank of said river to a stake a cottonwood brs. S. 34½ E. 3 vrs. and most northerly of a 79½-acre tract sold to J. Kosminsky (this 79½-acre tract being the west half of the C. M. Collom survey). The above-described tract containing 88½ acres of land, more or less."

The appellee offered evidence going to show that he and B. H. Hooks and Harry Hooks, under whom he claims, have since 1901, and to the filing of this suit in 1921, personally and by tenants been in actual and exclusive possession of the whole of the original C. M. Collom survey, cultivating, using and enjoying it, and paying all taxes on it, and claiming it under their deed to the limits of the survey. There is no definite proof, though, where the river was situated at the time B. H. Hooks and Harry Hooks acquired the survey, nor as to the extent of the line from the corner of the Peters survey east to the river at that time or for a definite time since. It does not definitely appear that the entire accreted land or the river frontage was under fence and used prior to 1913. Appellants proved that Wiley Whitfield, their immediate predecessor, had actual possession of a part of the accreted land in controversy for about two years before the filing of the suit.

Rodgers & Rodgers, Graham, Williams & Taylor, and C. S. Todd, all of Texarkana, for appellants.

Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellants first insist that they were entitled to recover the accreted land lying east of the C. M. Collom survey, because the land conveyed by the Rochelles to J. Kosminsky and his successors in title, now held by appellee, did not extend to the river so as to carry or acquire riparian rights and the right of alluvion along that part of the river. The contention is that there was conveyed to J. Kosminsky only the original highland along the water front, and there was not conveyed, but expressly and definitely excluded from his purchase, the beach or accreted land which at that time had already formed between such highland and the water's edge. A solution of the question requires an examination of the deed to Mr. Kosminsky, for the succession of the appellants to the title of the Rochelles is dependent upon the construction to be given to the prior deed of the Rochelles to Mr. Kosminsky, under whom appellee claims title. It is a recognized principle that a riparian owner may, upon the sale of the upland, reserve either submerged or accreted land, or any part of it, or he may make it the subject of a separate sale, or sell it with the upland. The general rule, however, is that the accreted land passes to a grantee of the upland as an incident or appurtenance unless reserved upon a sale of the upland. The question of the intent of the grantor that the submerged or accreted lands or any part thereof shall or shall not pass with the upland is according to the rules, to be determined and found in the terms of the deed of conveyance. The deed here to Mr. Kosminsky makes no express reservation.

[2] The appellants, though, say that the calls in the deed are uncertain and ambiguous, and parol evidence offered to explain them shows the undoubted intention to make the reservation of the beach or accreted land at the time from the sale to J. Kosminsky. The "east half of the C. M. Collom survey" was clearly and in words conveyed to Mr. Kosminsky, and it was to be bounded, according to the plain calls of the deed, on the east and north by Red river. There is a call for "the west bank of Red river, thence with the meanderings of the said river, thence with the bank of said river to a stake," etc. The words "west bank," as applied to a river, means the land adjacent to the water on the west side thereof. That exact definition should here be given to it, in view of the next and following calls being "thence with the meanderings of the said river, thence with the bank of said river." The second call could not be followed as it is written, unless the preceding words, "bank of the river," have application to the land adjacent to the water of the river. The stream, as a natural object, is the intended boundary. That no other bank but the bank of the river as it then ran was meant is apparent,

when all the calls are considered together, as they must be, according to legal rules.

[3] Thus the stream itself is the call to bound the land by a line to the margin of the river, or the water's edge, then along the margin or water's edge. Consequently, as the calls in the deed are not uncertain or ambiguous, they cannot be varied, as undertaken in the trial, by parol evidence. Besides, even the parol evidence offered, if considered, would sustain the ruling of the trial court, as involved in his decision, that no other or different bank of the river was shown to exist on the ground so as to make two banks of the river existing at the time of the conveyance. The calls, however, in the Kosminsky deed, must control. Muller v. Landa, 31 Tex. 265, 98 Am. Dec. 529; Griffin v. Barbee, 29 Tex. Civ. App. 325, 68 S. W. 698. The purchaser, then, took under this deed to the bank of the river as it was or might thereafter be by accretion. As a legal consequence, appellants have no title to the accreted land of the C. M. Collom survey. Moreover, it is thought that, under the undisputed evidence, the adverse occupancy by Hooks conclusively established a title by limitation in Hooks in 1906, as against the Rochelles, to the C. M. Collom survey accretions.

[4, 5] Appellants next insist that, as they showed title to the accreted land of the John Collom survey, the accretions must be apportioned to the owners of the lands in the two surveys in proportion to the river frontage. This would be true, we think, as a matter of law in this record, unless it should further be said that the trial court was authorized to conclude, as a matter of law, that the appellants' right to any part of the accreted land of the John Collom survey was defeated by the adverse possession under limitation of appellee and those under whom he claims. After a full consideration of the record, we have concluded that the evidence on this question of limitation, so far as it pertains to appellants' title and claim to the J. W. Collom survey, was not of that conclusive character that authorized the court to take the question away from the jury. There is evidence that Hooks fenced, used, and cultivated land, some of it including accreted land, and paid taxes on it for some years. But they were claiming it solely under the terms of their deed and to the extent of their deed, which made it entirely a part of the C. M. Collom survey. Further, the possession and use of the land by Hooks extended inferably to the accreted land proceeding directly from the C. M. Collom survey, and not wholly on the entire front and proportion of land accreted to the John Collom survey, a separate and distinct survey. And it does not definitely appear that the entire accreted land was actually inclosed by a fence, an used in adverse possession, to or along the river front prior to 1913. The accretions in becoming a part of the lands to which they are joined take the title and condition of that land just as it exists at the time of their formation. If the true riparian owner of the mainland is in possession of the mainland under his deed, then he is in constructive possession of the accretion. But if the mainland is in a possession adverse to the true riparian owner, he is not in constructive possession of the accretion. Then, unless the riparian owner of the mainland is barred by the statutory limitation of adverse possession as to the mainland, or as to the entire river frontage on the river, he is entitled to recover in a suit against him. The right to accreted land is by virtue of ownership of the original shore line or river frontage. From the beginning the accretion was but an increment of the river frontage, and whatever right the appellants and their predecessors in title ever had in the river frontgage, that same right they necessarily have in the increment, as inseparable from the river frontage right. In order, then, for the appellee to claim a right to the accreted land belonging to the John Collom survey, having no deed of conveyance thereto, he must show that his claim rests upon adverse possession for the statutory period of 10 years. The rule is that the possession of a mere intruder, or person without deed or color of title, upon accretions formed to land, will not be adverse as against the rightful owner, except as to the part he actually occupies and incloses, which inclosure must be definite and notorious. 1 R. C. L. p. 235; Railway Co. v. Groh, 85 Wis. 641, 55 N. W. 714.

[6, 7] It follows that, if appellants be not barred by adverse possession of appellee and those under whom he claims as to their right to accreted land of the John Collom survey, then they are entitled to have the accretions apportioned to the owners of the lands in the two surveys in proportion to the river frontage of the east boundary of the C. M. Collom survey and the north boundary of the John Collom survey as shown in the original field notes thereof, and the present frontage of said surveys on the river inclosing the accreted lands. City of Victoria v. Schott, 9 Tex. Civ. App. 332, 29 S. W. 681; 29 Cyc. p. 353; 1 R. C. L. pp. 244, 245; Johnston v. Jones, 1 Black, 209, 17 L. Ed. 117. Appellants are entitled to their river frontage as a vested right, if not barred by limitation, regardless of how small or large the original tract was. Fulton v. Frandolig, 63 Tex. 330.

There was error in giving the peremptory instruction, and the judgment is reversed, and the cause remanded for another trial.