Dellana 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-131-CV





CHARLES B. DELLANA, RALPH A. DELLANA,


RICHARD L. BOWEN AND DIANE R. BOWEN,



 
 APPELLANTS


vs.





CARROLL WALKER,



 APPELLEE



 




FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT



NO. 89-0403, HONORABLE FRED A. MOORE, JUDGE PRESIDING



 




 Carroll Walker, appellee, brought a trespass-to-try-title suit against Charles B.
Dellana, Ralph A. Dellana, Richard L. Bowen and Diane R. Bowen (collectively, "the Dellanas"),
appellants, seeking title to a 3.393-acre tract in Hays County. Based on the jury's verdict, the
trial court rendered judgment awarding title and possession of the tract to Walker. On appeal, the
Dellanas contend that the trial court erred in rendering judgment because there was no evidence
"tying the property description to the ground" and because the jury's failure to find adverse
possession was against the great weight and preponderance of the evidence. The Dellanas also
complain that the court erred in admitting expert testimony not disclosed in discovery. We will
affirm the trial court's judgment.




FACTUAL AND PROCEDURAL BACKGROUND


 Walker and the Dellanas are adjoining landowners. Pursuant to a 1923 deed, the
south boundary of Walker's property is "the north bank" of Onion Creek; the Dellanas have
record title to the land south of the north bank of the creek. Although there is a rock and wire
fence a short distance north of the north bank, it is undisputed that Walker's record title includes
the land north of the bank, not just the land north of the fence.

 Sometime prior to 1979, a dam was built across Onion Creek causing the water
level of the creek to rise. As a result, the original north bank of the creek is now under water. 
There is no evidence of the bank's original location.

 In 1989, Walker brought a trespass-to-try-title suit against the Dellanas. Walker
alleged title to a 3.393-acre tract, consisting of the land between the creek and the fence. The
Dellanas also claimed title to the tract; their claim was based on adverse possession under the five-
and ten-year statutes of limitation. Tex. Civ. Prac. & Rem. Code Ann. § 16.025 (West 1986) &
§ 16.026 (West 1986 & Supp. 1993). The parties stipulated to a common source of title.

 The case was tried to a jury, which failed to find adverse possession under either
statute. Consistent with the jury's verdict, the trial court rendered judgment for Walker, awarding
him title and possession of the tract. The judgment describes the tract as follows:


BEING 3.393 acres of land out of and part of the Walker Ranch, described in a
conveyance to Parker Walker et ux, recorded in Volume 150, Page 218, of the
Real Property Records of Hays County, Texas, said property being out of and a
part of the S.W. Yeager Survey No. 35, A-510, and described by metes and
bounds as follows:


BEGINNING at a point marking the intersection of the east line of the Walker
Ranch with the north bank of Onion Creek, the southeast corner of this tract;


THENCE with the north bank of Onion Creek, N 89 degrees, 37' 14" W 221.97
feet, S 61 degrees 51' 14" W, 416.72 feet, S 41 degrees, 41' 35" W 466.76 feet,
S 14 degrees, 32' 08" W 348.3 feet, S 9 degrees 33' 46" W 161.41 feet, and S 44
degrees 11' 17" West 598.58 feet to a point marking the southwest corner of this
tract;


THENCE with a fence, N 13 degrees 59' 14" W 100.74 feet to a fence corner
marking the northwest corner of this tract;


THENCE with a fence, N 44 degrees 27' 55" E 407.84 feet, N 22 degrees 54' 34"
E 165.12 feet, N 4 degrees 36' 05" E 117.57 feet, N 28 degrees 33' 06" E 407.52
feet, N 46 degrees 10' 52" E 399.58 feet, N 57 degrees 07' 34" E 422.15 feet and
S 84 degrees, 47' 44" E 252.77 feet to a fence corner marking the northeast corner
of this tract situated in the fenced east line of the Walker Ranch;


THENCE with the east line of the Walker Ranch S 13 degrees 03' 07" E 30.56
feet to the POINT OF BEGINNING and containing 3.393 acres of land.



DISCUSSION


 The Dellanas' first three points of error center around references to "the north
bank" of Onion Creek contained in the pleadings, the evidence, and the judgment. The Dellanas
argue that the metes and bounds reference to the "bank" contained in the judgment is to the
original bank of the creek. The surveyor who prepared a 1979 survey testified, however, that the
"bank" referred to in the survey and in his testimony was, in actuality, the edge of the water after
the dam was constructed.

 In their first point of error, the Dellanas complain that there is insufficient evidence
to tie the metes and bounds property description to the ground. They argue that the evidence and
judgment are inconsistent, i.e., that the proof only established the water's edge, while the
judgment awards land to the original creek bank. The Dellanas urge that since there was no
evidence of where the bank was originally located, there is no evidence locating the bank on the
ground.

 A party bringing a trespass-to-try-title suit is not obligated to assert his claim to the
full extent of his deeded boundaries. All he has to show is that the tract of land in controversy
is within the description of a larger deeded tract. Davis v. Grogan Mfg. Co., 177 S.W.2d 213,
215 (Tex. Civ. App.Texarkana 1943, writ ref'd). The term "bank" is construed to mean the
land adjacent to or on the edge of the water. (1) Graham v. Knight, 240 S.W. 981, 983-84 (Tex. Civ. App.Texarkana 1922, no writ). Both parties agree that Walker has record
title to the land between the rock and wire fence and the original creek bank. By establishing that
the original bank was under water, Walker showed that the land in disputebetween the fence and
the water's edgewas within this larger tract. We conclude that the judgment, by referring to "the
north bank" of the creek, intended to describe the land to the current water's edge. Thus, there
is no inconsistency between the proof and the judgment. Walker proved and was awarded title
to the tract up to the edge of the water. We overrule the Dellanas' first point of error.

 In their second point of error, the Dellanas contend the judgment fails to identify
the land in controversy so that an officer charged with the duty of executing a writ of possession
could locate the property without exercising judicial functions. They argue that the reference to
the edge of the water of the creek is not adequately tied to the ground because, as the water level
in the creek rises and falls, the edge of the water changes. We disagree.

 A judgment for title and possession of land in a trespass-to-try-title action must
describe the land with reasonable certainty. James v. Butler, 350 S.W.2d 376, 377 (Tex. Civ.
App.Beaumont 1961, writ ref'd n.r.e.). That is, the land must be described so that an officer
executing a writ of possession thereunder could, with the aid of a competent surveyor, find the
boundaries of the land. Id. The beginning point and corners should be established and marked
in such a way that there can be no controversy. Brown v. Eubank, 378 S.W.2d 707, 713 (Tex.
Civ. App.Tyler 1964, writ ref'd n.r.e.).

 In the present case, the judgment describes the tract as proceeding "THENCE with
the north bank of Onion Creek . . ." and following the general course of the creek. This call
appears to be a meander line. In such a description, the stream, and not the various courses and
distances, is the real boundary. Allen v. Morales, 665 S.W.2d 851, 852-53 (Tex. App.Fort
Worth 1984, no writ); Graham, 240 S.W. at 983. The rules regarding accretion and avulsion
apply to any changes in the stream that alter the amount of land north of the bank. Graham, 240
S.W. at 984. The judgment awards title and possession of the land up to the water's edge to
Walker. An officer executing a writ of possession thereunder could locate the edge of the water. 
We overrule point of error two.

 In their third point of error, the Dellanas complain of the trial court's refusal to
submit to the jury their requested question inquiring whether the 3.393 acres described by metes
and bounds can be identified on the ground with reasonable certainty. The record shows that
there was no factual dispute as to where the land was located. The only disputes were whether
Walker was required to locate the original bank of the creek and whether the edge of the water
could be "tied to the ground." We hold that Walker did not have to sue for the land between the
fence and the original bank, but instead could sue for that portion to the edge of the water. (2) 
Consequently, Walker did not have to locate the original bank. We further hold that a reference
in a description to the "bank" or edge of the water is adequately tied to the ground. We overrule
point of error three.

 In point of error four, the Dellanas contend that the district court erred in refusing
to grant their motion for new trial because the jury's failure to find adverse possession under the
ten-year statute of limitations was contrary to the great weight and preponderance of the evidence. 
The Dellanas do not challenge the jury's failure to find adverse possession under the five-year
statute, which contains additional requirements that a plaintiff must meet.

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951);
see generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and
"Insufficient Evidence," 69 Tex. L. Rev. 515 (1991). Where the complaint is of a jury's failure
to find, we must be mindful that the jury was not convinced that the factual proposition was
proved by a preponderance of the evidence. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex.
1988). We are not entitled to reverse merely because we conclude that the evidence preponderates
toward an affirmative answer, but rather, reversal is warranted only when the great weight of the
evidence requires an affirmative answer. Id.

 At trial, the Dellanas presented the testimony of Hill Quick, a predecessor in title,
who had lived on the land for approximately seventy-eight years. Quick still owned a portion of
his original tract of land. He testified that the rock and wire fence had been there as long as he
could remember, probably about one hundred years. Quick and his father helped maintain the
fence along with Walker and Walker's father. He recalled cattle grazing on the 3.393-acre tract
during his lifetime.

 Several other witnesses, however, testified that the fence was consistent with a
"field fence"; that is, it appeared to have been built back from the creek so that it would not be
washed away by a heavy rain. They testified that the fence was probably built to turn livestock,
and was not intended to serve as the boundary to the property. These witnesses said that cattle
grazing in such an area would not typically be associated with a hostile claim.

 Quick was not aware of any claim by Walker or Walker's father to the land prior
to this suit. However, Quick did not testify that he or his father ever informed Walker or
Walker's father of their claim to the land. Similarly, Ralph Dellana, the only defendant called
as a witness, did not testify that he informed Walker of his claim to the tract before this suit. The
Dellanas also introduced evidence that they and their predecessors in title had paid taxes on the
property. Walker disputed this testimony.

 Adverse possession is "an actual and visible appropriation of real property,
commenced and continued under a claim of right that is inconsistent with and is hostile to the
claim of another person." Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (West 1986). "The
possession must be of such character as to indicate unmistakably an assertion of a claim of
exclusive ownership in the occupant." Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990)
(citations omitted).

 A claimant who relies solely on a fence to show adverse possession must show that
the fence was "designedly enclosed." Orsborn v. Deep Rock Oil Corp., 267 S.W.2d 781, 785
(Tex. 1954). "If the fence existed before the claimant took possession of the land and the claimant
fails to demonstrate the purpose for which it was erected, then the fence is a `casual fence.' 
Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's
animals within the enclosed area, generally does not change a casual fence into a designed
enclosure." Rhodes, 802 S.W.2d at 646 (citations omitted).

 A claim of right must be manifested by declaration or by open or visible acts. "If
there is no verbal assertion of a claim to the land brought to the knowledge of the landowner, the
adverse possession must be so open and notorious and manifested by such open or visible act or
acts that knowledge on the part of the owner will be presumed." Orsborn, 267 S.W.2d at 787
(citation omitted).

 The Dellanas did not show a visible appropriation of the land. The only evidence
in the record tending to show a visible appropriation is the mutual repairing of the fence and the
grazing of cattle. The Dellanas did not show when or for what purpose the fence was originally
built. It is presumed, therefore, to be a casual fence. Evidence of repairing the fence, without
more, would not change its character to a designed enclosure.

 The Dellanas did not present evidence that they verbally asserted a claim to the
land. Nor was their possession of the land so open and notorious that knowledge of their claim
may be presumed. Several witnesses testified that grazing cattle on the tract would not typically
indicate a hostile claim to the land.

 After weighing all the evidence, we cannot say that the jury's failure to find adverse
possession is so contrary to the great weight and preponderance of the evidence as to be manifestly
unjust. We overrule the Dellanas' fourth point of error.

 In point of error five, the Dellanas assert that the district court erred in admitting
testimony of Walker's expert witness beyond the scope of his opinions disclosed in pretrial
discovery. Walker's expert, Kilber, was identified in discovery as an engineer familiar with the
property and its boundaries and a person having expertise in the area of boundary questions. At
trial he testified that tax records showed that it was impossible the Quicks paid taxes on the
property prior to 1971. He also testified that when the Dellanas' predecessor in title, Hutto,
purchased the property, the 3.393-acre tract was not included and that it was not until after 1975
that there was even a possibility that Hutto was paying taxes on the property.

 We do not decide, however, whether it was error to admit the complained-of
testimony, because we conclude that any such error was harmless. The issue submitted to the jury
on the five-year statute of limitation inquired whether the Dellanas paid taxes for any period of
five years or longer prior to 1989; it did not ask whether any of the Dellanas' predecessors in title
had paid taxes on the property. Kilber testified, however, that his opinions did not relate to
whether the Dellanas paid taxes after they acquired the property in 1980. Accordingly, Kilber's
testimony was not relevant to the question submitted to the jury regarding the five-year statute of
limitations.

 The issue submitted to the jury on the ten-year statute of limitation did not require
the jury to make any finding as to the payment of taxes. Although payment of taxes is some
evidence of adverse possession, it is insufficient to establish adverse possession as a matter of law. 
Rhodes, 802 S.W.2d at 646. In any event, we could not say that the admission of Kilber's
testimony, even if erroneous, was reasonably calculated to cause and probably did cause rendition
of an improper judgment. Tex. R. App. P. 81(b)(1). We overrule point of error five.


CONCLUSION


 The judgment of the district court is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: November 24, 1993

Publish
1. Some confusion is created in this case from the use of the "bank" to describe the location
of the tract in dispute. In the conveyances under which Walker claims, "the north bank"
served as the boundary between Walker's and the Dellanas' properties. Sometime thereafter,
the dam was built and the boundary was inundated by water. The parties apparently agree,
however, that the record boundary did not change to reflect the new water's edge but remained
where it was originally located. Therefore, although the chain of conveyances to Walker
describes "the north bank" as the boundary, the record boundary is not the current water's
edge, but the original location of the bank.


 In 1979 Walker had a survey prepared to describe the land in dispute. In that survey,
the surveyor located the water's edge as it existed at that time and denoted it as "the north
bank" in his metes and bounds description. Walker later brought suit for the land between the
fence and the water's edge. Like the surveyor, Walker used the phrase "the north bank" in his
pleadings and proof to describe the current water's edge, not the original north bank.
2. Walker did not sue for the land between the edge of the water and the original bank and
that land is not in dispute in this case. We do not address the rights of either party to that
land.